NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 CA 0840

M. LEROY HARVEY, JR., WILLIAM T. JACKSON, JOHN H. JACKSON, SUSAN J. VIDRINE, M.L. HARVEY SR. TRUST FOR M. LEROY HARVEY, JR. AND CHILDREN, JACKSON LAND COMPANY, LLC, JAMES F. JACKSON, FRANCES J. STAFFORD, LAURIE H. HARRINGTON, AND M.L. HARVEY SR. TRUST FOR JAMES F. HARVEY AND CHILDREN

VERSUS

DAN S. COLLINS, DSC ASSOCIATES, LLC, AND DAN S. COLLINS, CPL & ASSOCIATES, INC.

Judgment Rendered: APR 1 6 2021

Appealed from the
Twentieth Judicial District Court
In and for the Parish of West Feliciana, Louisiana
Docket Number 23275
Honorable William G. Carmichael, Judge Presiding

**************

Michael S. Walsh
Edward D. Hughes
Tom S. Easterly
Baton Rouge, LA
and
Stewart B. Hughes
St. Francisville, LA

Counsel for Plaintiffs/Appellees,
M. Leroy Harvey, Jr.; Succession of
William T. Jackson; John H. Jackson;
Susan J. Vidrine; M.L. Harvey, Sr. Trust
for M. Leroy Harvey, Jr. and Children;
Jackson Land Company, LLC; James F.
Jackson; Frances J. Stafford; and Laurie
H. Harrington

Robert O. Butler, Jr.
St. Francisville, LA
    and
A.M. "Tony" Clayton
Michael P. Frugé
Richard J. Ward, III
Michael C. Hendry
Port Allen, LA

Counsel for Defendants/Appellants,
Dan S. Collins; DSC Associates, LLC; and
Dan S. Collins, CPL & Associates, Inc.

Michael S. Walsh
Edward D. Hughes
Tom S. Easterly
Baton Rouge, LA
    and
Stewart B. Hughes
St. Francisville, LA

Counsel for Defendant-in-Reconvention,
Harry-Harrington Land, LLC

Robert O. Butler, Jr.
St. Francisville, LA
    and
A.M. "Tony" Clayton
Michael P. Frugé
Richard J. Ward, III
Michael C. Hendry
Port Allen, LA

Counsel for Plaintiff-in-Reconvention/
Appellant, DSC Associates, LLC

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

This matter is before us on appeal in a declaratory judgment action regarding the enforceability of a mineral services consulting agreement, wherein plaintiffs sought declarations that: (1) the agreement was not enforceable relative to certain oil and gas leases and (2) plaintiffs owed defendants no money. Defendants reconvened for declaratory judgment as to the enforceability of the agreement as to those mineral leases in dispute and for payment due. After two motions for summary judgment were filed by plaintiffs, the district court rendered judgment in plaintiffs' favor, declaring that the agreement to provide mineral consulting services had no legal effect relative to certain oil and gas leases and that plaintiffs owed defendants no money, and further dismissing defendants' reconventional demand for declaratory judgment and for sums allegedly due under the agreement. For the following reasons, we vacate in part, amend in part, and affirm, as amended.

## FACTS AND PROCEDURAL HISTORY

This appeal arises in a suit for a declaratory judgment, seeking a declaration regarding the enforceability of an alleged contract to provide mineral consulting services relative to certain oil and gas leases. The document at issue, entitled "Mineral Services Consulting Agreement" ("the Agreement"), purports to be a consulting contract between DSC Associates, LLC ("DSC"), referred to in the Agreement as "Mineral Consultant," acting through Dan S. Collins, CPL & Associates, Inc., and various owners of a large area of land (referred to in the Agreement as the "Mineral Interest"). At the time the Agreement was purportedly confected, the owners of the Mineral Interest, referred to in the Agreement collectively as "the Mineral Owner," included members of the Melba L. Harvey, Sr. family, the Rosemary Harvey Jackson and William T. Jackson family, family trusts, and three closely held family corporations, together referred to by the parties

3

as "the Harvey-Jackson Family."[1] Through the Agreement, DSC was to provide various services to the Mineral Owner, including management and negotiation of mineral leasing activities in the Mineral Interest, negotiation and supervision of seismic programs, preparation and maintenance of computer records of Mineral Interests and related information, evaluation and negotiation of surface damage claims, evaluation and negotiation of Mineral Interest transfers, and other activities relating to transactions in the Mineral Interest. The Agreement provided for an initial term of one year from the effective date, to be extended on a month-to-month basis thereafter and further provided that it was terminable after the initial one-year term by either party upon thirty-day written notice.

Collins, a certified professional landman, first represented some members of the Harvey-Jackson Family in 2006. However, even prior to that, beginning in late 2005, Collins had met with members of the Harvey-Jackson Family in an effort to enter into a written mineral consulting agreement with them, and he ultimately presented the Agreement at issue to the Harvey-Jackson Family in September of 2007. The Agreement was not fully executed, as it was signed by Dan Collins on behalf of DSC, but by only eight of the twelve parties or entities collectively referred to in the Agreement as the "Mineral Owner."[2] Moreover, the date the Agreement was allegedly executed and effective was never completed, instead merely providing the typewritten words "Executed and effective this __ day of September, 2007."

---

[1]The parties listed in the Agreement as "Mineral Owner" included: M. Leroy Harvey; James F. Harvey; William T. Jackson; M. L. Harvey, Sr. Trust for M. Leroy Harvey and Children; M. L. Harvey, Sr. Trust for James F. Harvey and Children; the Jackson Land Company, LLC; Harvey Lands I, LLC; Harvey Produce; Frances J. Stafford; James F. Jackson; John H. Jackson; Susan J. Vidrine; Laurie H. Harrington; and Emily F. Harvey.

[2]The Agreement was signed by the following Harvey-Jackson Family members: M. Leroy Harvey; William T. Jackson; Jackson Land Company, LLC, by John H. Jackson; Frances J. Stafford; James F. Jackson; Susan J. Vidrine; John H. Jackson; and Laurie H. Harrington. Those not signing were James F. Harvey; Harvey Lands, I, LLC; Harvey Produce; and Emily F. Harvey. Also, no signature lines were provided for the two Harvey-Jackson Family trusts; rather, directly above the signature lines for the "Mineral Owner" was the statement that the below individuals, in addition to acting individually, were acting on behalf of the trusts.

Nonetheless, in the ensuing years, Collins, through his operating entities DSC and Dan S. Collins, CPL & Associates, rendered mineral consulting services for members of the Harvey-Jackson Family, for which his companies were compensated by direct payments from mineral lessees and, in some instances, through the assignment of a percentage of the Harvey-Jackson Family's royalty interests.

In March of 2018, after learning that members of the Harvey-Jackson Family had entered into various mineral leases with Amelia, WI, LLC ("Amelia") without his assistance, Collins, on behalf of DSC, through Dan S. Collins, CPL & Associates, Inc., filed a Notice of Contract in the Conveyance Records of West Feliciana Parish, stating that DSC and the eight members of the Harvey-Jackson Family who had signed the Agreement, as well as the two Harvey-Jackson Family trusts on whose behalf they allegedly signed, had executed and entered into the Agreement in September of 2007. Collins did not name in the Notice of Contract those members of the Harvey-Jackson Family who had never signed the Agreement.

In response to the Notice of Contract, counsel for the members of the Harvey-Jackson Family who had signed the Agreement sent a letter to Collins dated May 3, 2108, and received by Collins on May 8, 2018, informing him that the Harvey-Jackson Family did not consider the Agreement to be a viable contract, that but nonetheless, out of an abundance of caution, Collins was notified that the letter constituted written termination of the Agreement pursuant to Section 3 thereof. Additionally, seeking to resolve the dispute regarding the validity and enforceability of the Agreement, plaintiffs, seven members of the Harvey/Jackson Family who signed the Agreement in 2007, the estate of the remaining member of the Harvey-Jackson Family who signed the Agreement, and one of the two trusts on whose behalf they allegedly signed the Agreement, filed the instant suit for

declaratory judgment on June 28, 2018, naming as defendants Dan S. Collins, individually; DSC Associates, LLC; and Dan S. Collins, CPL & Associates, Inc. (collectively referred to as "the Collins defendants").[3]

In their petition, plaintiffs alleged that the Agreement, which they attached to the petition and identified as "Exhibit A," was never fully executed and therefore remained incomplete, given that several proposed parties had never signed it. They further averred that between September 2007 and approximately 2011, the Collins defendants' efforts on behalf of various members of the Harvey-Jackson Family had primarily revolved around what was referred to as the Tuscaloosa Marine Shale ("TMS") opportunity, but that by approximately late 2013, the TMS had become economically unfeasible. According to plaintiffs, between 2013 and 2017, there was little business contact between the Harvey-Jackson Family and the Collins defendants, with Dan Collins providing no mineral consulting work for them during that time. Plaintiffs further alleged that Dan Collins did not consult with them or their families about any other mineral opportunities after the TMS opportunity ended, and in September 2017, Collins disclosed to some of the Harvey-Jackson Family members that he had retired from his engagement as a mineral consultant. Accordingly, plaintiffs regarded any business relationship between them and the Collins defendants as dissolved

As further alleged in the petition, in late 2017 and early 2018, the Harvey-Jackson Family was approached by a third party about a new opportunity known as the Austin Chalk Play, which was materially different from the TMS opportunity. According to plaintiffs, they then entered into new oil and gas leases relative to the

---

[3]The plaintiffs named in the original petition included M. Leroy Harvey, Jr.; John H. Jackson; the Succession of William T. Jackson; Susan J. Vidrine; the M.L. Harvey, Sr. Trust for M. Leroy Harvey, Jr. and Children; Jackson Land Company, LLC; James F. Jackson; Frances J. Stafford; Laurie H. Harrington; and M.L. Harvey, Sr. Trust for James Ford Harvey and Children. However, in the first amended petition, M.L. Harvey, Sr. Trust for James Ford Harvey and Children was removed as a plaintiff.

Austin Chalk Play in late 2017 and early 2018, with no interaction or assistance from the Collins defendants. However, in addition to DSC's filing the Notice of Contract, as a result of discussions between the parties, plaintiffs learned that the Collins defendants were contending that they were entitled to mineral lease proceeds received by plaintiffs from the newly executed Austin Chalk Play mineral leases. Thus, plaintiffs filed the instant suit to resolve the parties' conflict surrounding the Agreement.

Essentially, plaintiffs sought a judgment declaring: (1) that "the document attached as Exhibit A" was not enforceable relative to any oil and gas leases associated with the Austin Chalk Play or any contracts that were executed by plaintiffs in 2017 or 2018; (2) that plaintiffs are entitled to regard "Exhibit A" as dissolved and without legal effect as to any leases associated with the Austin Chalk Play and/or executed in 2017, 2018, or later; and (3) that they owed the Collins defendants no money, nor were they obligated to assign or otherwise pay any royalties to the Collins defendants.

Defendant DSC filed a reconventional demand against plaintiffs,[4] seeking a judgment declaring that DSC's compensation as provided under the Agreement attached and remained applicable to all leases granted by one or more plaintiffs/defendants-in-reconvention affecting the Mineral Interest that were

---

[4]Although the M.L. Harvey Sr. Trust for James F. Harvey and Children was no longer a named plaintiff, DSC also named it as a "defendant-in-reconvention." However, the record contains no answer by the trust to the reconventional demand. Additionally, on motion of plaintiffs who averred that the trust had been terminated, the district court granted a protective order precluding discovery of documents regarding the trust as a non-party.

DSC later amended its reconventional demand to add Harvey-Harrington Land, LLC, as an additional "defendant-in reconvention," despite the fact that Harvey-Harrington Land was not a named plaintiff. DSC contended that Harvey-Harrington Land, LLC was bound by the Agreement as a successor by virtue of M. Leroy Harvey, Jr.'s transfer of some or all of his interest in the Mineral Interest to it. However, DSC's claims against Harvey-Harrington Land were dismissed with prejudice on an exception of no right of action, and that judgment of dismissal was affirmed on appeal. Harvey v. Collins, 2019-1356 (La. App. 1st Cir. 7/23/20), 2020 WL 4214348, *5, writ denied, 2020-01044 (La. 11/10/20), 303 So. 3d 1042.

7

granted or for which negotiations had commenced prior to June 8, 2018,[5] including those granted in 2017 to Amelia. DSC also sought payment for those leases under the terms of the Agreement.

Thereafter, plaintiffs filed two motions for summary judgment, namely, a "Motion for Summary Judgment Regarding Lack of Performance" and a "Motion for Summary Judgment Regarding Absence of a Contract." Following a hearing on plaintiffs' motions, the district court, by judgment dated March 3, 2020, granted both motions, rendered declaratory judgment in favor of plaintiffs regarding lack of performance and the "absence of a contract," declared that the "Mineral Services Consulting Agreement" was unenforceable and had no legal effect regarding the Austin Chalk formation or any other oil and gas leases executed in 2017 or later, and dismissed DSC's reconventional demand. From this judgment, the Collins defendants appeal.

## RULE TO SHOW CAUSE ORDER

This court issued a Rule to Show Cause Order on November 9, 2020, noting that the judgment on appeal made reference to "a document outside the judgment that is not attached to the judgment" and that to be considered a final, appealable judgment, the specific relief ordered therein should be determinable from the judgment without resort to any extrinsic source or to other documents in the record. Thus, this court ordered the parties to show cause by briefs whether the appeal should be dismissed. The parties responded by filing a joint brief and supplemental brief, asserting that the relief granted in the judgment was discernable from its face. The Rule to Show Cause Order was then referred to the panel to which the appeal was assigned.

---

[5]DSC contended that because it received the May 3, 2018 termination letter on May 8, 2018, the Agreement was not terminated until 30 days thereafter, i.e., June 8, 2018.

On review, we conclude that the judgment is sufficiently precise, definite, and certain to constitute a valid final judgment to which our appellate jurisdiction will attach. While the March 3, 2020 judgment on appeal does state that "the document attached as Exhibit A to Plaintiffs' petition" carries no legal effect, it further notes and references the document by its title, namely that document entitled "Mineral Services Consulting Agreement." Thus, the judgment in fact names the document at issue.

The March 3, 2020 judgment on appeal provides in pertinent part:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment is hereby rendered in favor of Plaintiffs and against Defendants declaring that the document attached as Exhibit A to Plaintiffs' petition (and entitled "Mineral Services Consulting Agreement") is unenforceable;
>
> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment is hereby rendered in favor of Plaintiffs and against Defendants declaring that the document attached as Exhibit A to Plaintiffs' petition (and entitled "Mineral Services Consulting Agreement") carries no legal effect relative to any oil and gas leases, including but not limited to those specifically associated with the Austin Chalk formation and/or that were executed in 2017 and/or 2018 (or later) by the Plaintiffs ... .

A judgment, identified as such and complete in every respect, is not to be considered "not a judgment" merely because it contains surplus language. See Hinchman v. International Brotherhood of Electrical Workers, Local Union # 130, 292 So. 2d 717, 719 (La. 1974) (finding a judgment with incorporated reasons for judgment to nonetheless be a valid judgment); contrast Keen v. Webeland, Inc., 2019-0281 (La. App. 1st Cir. 2/21/20), 2020 WL 862500, *3 (unpublished) (wherein the judgment, which declared that a Bond for Deed contract that affected title to immovable property (as opposed to the personal services contract at issue herein) remained in effect, was held to not be a valid final judgment due to multiple deficiencies, including failure to identify the Bond for Deed contract by date, parties to the deed, or property to be transferred; failure to identify two

9

purchase agreements, the effect of which were adjudicated therein; and failure to specify the amount due under the Bond for Deed contract without reference to extrinsic documents).

Having concluded that the language in the judgment on appeal referring to the Agreement as "the document attached as Exhibit A to Plaintiffs' petition" is mere surplus language having no effect on the finality of the judgment, we recall the Rule to Show Cause Order and maintain the appeal.

## SUMMARY JUDGMENT PRECEPTS

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[6] LSA-C.C.P. art. 966(A)(4).

The burden of proof rests on the mover, who must show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3) & (D)(1). Only when the mover makes this showing does the burden shift to the opposing party to present evidence demonstrating a material factual issue remains. Action Oilfield Services, Inc. v. Energy Management Company, 2018-1146 (La. App. 1st Cir. 4/17/19), 276 So. 3d 538, 541-542.

---

[6]Nevertheless, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. LSA-C.C.P. art. 966(D)(2).

However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden then shifts to the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1); Action Oilfield Services. Inc., 276 So. 3d at 542.

Appellate courts review evidence *de novo* under the same criteria that govern the district court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So. 3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So. 3d 963. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP, 240 So. 3d at 936. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. Jones, 224 So. 3d at 417.

## DISCUSSION

### Summary Judgment Regarding Lack of Performance
### Resulting in Dismissal of Defendants' Reconventional Demand

On appeal, the Collins defendants contend, through two assignments of error, that the district court erred when it ignored the clear language of the Agreement and erroneously made factual determinations and weighed evidence on summary judgment in holding that the parties had not entered into the Agreement and therefore dismissing DSC's reconventional demand.

11

In their Motion for Summary Judgment Regarding Lack of Performance, plaintiffs asserted that, even assuming the Agreement were valid and enforceable, the Collins defendants would be entitled to compensation only if they performed "services" as defined in the Agreement. Arguing that the Collins defendants could not show that they had performed any "services" in connection with any mineral lease for which they had not already been paid, plaintiffs contended that the Collins defendants could not establish a valid claim for non-payment under the Agreement. Accordingly, plaintiffs sought summary judgment "as prayed for in Plaintiffs' amended petition," i.e., judgment declaring: (1) that the Agreement was not enforceable relative to any oil and gas leases associated with the Austin Chalk Play or that were executed in 2017 and 2018 by plaintiffs, and (2) that plaintiffs owed the Collins defendants no money and were not obligated to assign or otherwise pay any royalties to the Collins defendants. They also sought summary judgment dismissing DSC's reconventional demand.

In opposition to the motion, the Collins defendants acknowledged that they had not assisted the Harvey-Jackson Family in executing any new mineral leases between 2013 and 2017. However, they asserted that the Agreement had not been terminated and disputed that it was limited to any geographic zone, depth, or strata. The Collins defendants contended that there had been multiple contacts between the parties over the years involving business activities, including contacts in September and October 2017 regarding the Austin Chalk Play. According to the Collins defendants, **services they had rendered in the past,** which included providing shape file maps, property descriptions, and lease forms, benefitted the Harvey-Jackson Family with regard to mineral leases they executed with Amelia in 2017. They contended that these past services rendered to the Harvey-Jackson Family were integral in the rapid culmination of the mineral transactions with Amelia and ultimately with the assignment of those leases to ConocoPhillips

12

Company and State Line Exploration, LLC in late 2017 and 2018. Thus, the Collins defendants asserted that genuine issues of material fact existed as to whether services were rendered by them relative to the Amelia mineral transactions and whether there was a lack of performance by them.

The function of a declaratory judgment is to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. A court has the jurisdiction to declare rights, status, and other legal relations whether or not further relief is or could be claimed. LSA-C.C.P. art. 1871. The purpose of the declaratory judgment articles in the Louisiana Code of Civil Procedure is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and the articles should be liberally construed and administered. LSA-C.C.P. art. 1881. A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute. Williams v. City of Baton Rouge, 2002-0339 (La. App. 1st Cir. 2/14/03), 848 So. 2d 9, 13.

One who asserts a fact and seeks declaratory judgment declaring that fact has the burden of proving that fact. See Department of Health and Hospitals v. Teachers' Retirement System of Louisiana, 95-1034 (La. App. 1st Cir. 12/15/95), 665 So. 2d 748, 750, and Frierson v. Sheridan, 593 So. 2d 655, 657 (La. App. 1st Cir. 1991). As such, plaintiffs would have the burden of proof at trial of establishing their entitlement to declaratory judgment.

Conversely, a party claiming payment under a contract has the burden of proving that payment is owed. See Hester v. Burns Builders, 2011-1537 (La. App. 3rd Cir. 6/6/12), 92 So. 3d 641, 643, writ denied, 2012-1576 (La. 10/12/12), 98 So. 3d 875. In DSC's reconventional demand, DSC sought declarations that its right to compensation under the Agreement remained applicable to the mineral leases

13

affecting the Mineral Interest executed by plaintiffs in 2017 and 2018, and that DSC was entitled to payment thereunder. Thus, DSC, as plaintiff-in-reconvention, would have the burden of proof at trial of establishing not only the existence of a valid agreement in contract between the parties, but also that it was entitled to further payment under the terms of that contract.

Similarly, to the extent that plaintiffs sought summary judgment on their main demand declaring that the Agreement was not enforceable relative to the 2017 and 2018 mineral leases and that they owed nothing further to the Collins defendants, plaintiffs were required to establish that no genuine issue of material fact remained regarding the fact that the Collins defendants did not perform any services within the meaning of the Agreement relative to any mineral lease for which they had not already been paid. Only then would the burden shift to the Collins defendants to present evidence demonstrating a material factual issue remains.

However, to the extent that plaintiffs sought summary judgment dismissing DSC's reconventional demand, they needed only to point out to the court the absence of factual support for one or more elements essential to DSC's claim regarding its entitlement to payment under the Agreement. The burden would have shifted to DSC to produce factual support sufficient to establish the existence of a genuine issue of material fact as to its entitlement to payment in accordance with the terms of the Agreement.

In support of their motion, plaintiffs filed a copy of the Agreement,[7] which

---

[7] Plaintiffs also filed the affidavit of Scott Harrington, who was personally involved with the facts and circumstances surrounding various mineral transactions involving the Harvey-Jackson Family between 2007 and 2018. Harrington attested that all of plaintiffs' exhibits in support of their motion (other than the depositions filed) were true and accurate copies of those documents. In their memorandum in opposition to the motion, the Collins defendants contended that plaintiffs' exhibits did not comply with LSA-C.C.P. art. 966, were unverified, and were not competent or admissible in their own right. They further contended that the exhibits, other than the deposition excerpts and affidavits could not be considered because they were not sworn or certified copies in compliance with LSA-C.C.P. art. 967. The Collins defendants similarly

14

provided as follows with regard to "services":

> 1. <u>Duties of Consultant.</u>  Mineral Owner hereby engages Mineral Consultant to provide services in respect of the Mineral Interest, including without limitation (i) management and negotiation of mineral leasing activities, (ii) negotiation and supervision of seismic programs, (iii) preparation and maintenance of computer records of Mineral Interests and related information, (iv) evaluation and negotiation of surface damage claims, (v) evaluation and negotiation of Mineral Interest transfers, and (vi) other activities of various description relating to transactions in the Mineral Interest (collectively, the "Services").  Mineral Owner acknowledges and agrees that the Services to be provided by Mineral Consultant will be performed by DSC.

With regard to compensation to DSC, the Agreement provided, "For and in consideration of the Services, Mineral Consultant shall receive compensation from Mineral Owner as follows: ..."  The Agreement then provided various payment terms: (1) "[f]or new mineral leases **entered on behalf of Mineral Owner** during the effectiveness of this Agreement"; (2) "[i]n the event and to the extent **Mineral Consultant is able to improve the terms and conditions of an existing mineral lease** covering the Mineral Interest"; (3) in the event the "**Mineral Consultant**" is able "**to obtain for Mineral Owner**" **payments** for seismic programs and permits or compensation for damages, surface use, and right-of-way agreements related thereto, and "[i]n the event **Mineral Consultant is able to negotiate** a seismic permit with option for mineral lease...covering the Mineral Interest"; and (4) "**in the event of Services to an [sic] Mineral Owner in connection with any sale or transfer** of part or all of Mineral Owner's Mineral Interest, or any damage award settlement or judgment, or other event or transaction **in which Services by**

---

complained about plaintiffs' exhibits in support of their Motion for Summary Judgment Regarding Absence of a Contract in their opposition memorandum as to that motion.

However, at the hearing on the motions for summary judgment, plaintiffs' counsel stated that they were submitting the affidavit of Harrington and the attached documents filed with each motion, and when the district court then asked counsel for the Collins defendants if there was any objection to plaintiffs' offerings, counsel responded, "No, sir, Your Honor." Additionally, the Collins defendants have not assigned error on appeal to the competency or admissibility of plaintiffs' exhibits in support of either motion.  Accordingly, we consider the objections withdrawn and/or waived.

**Mineral Consultant result in net recovery of funds** by Mineral Owner." (Emphasis added). Thus, the clear language of the Agreement provided for payment to DSC **only** upon rendition of "services" that directly resulted in the occurrence of one of the listed events or where the "services" rendered resulted in net recovery of funds to the Mineral Owner.

Plaintiffs also submitted a copy of the deposition of Collins. With regard to the mineral leases executed by the Harvey-Jackson Family with Amelia in late 2017, which were ultimately assigned to ConocoPhillips and State Line Exploration, Collins acknowledged that he knew nothing about the leases until a telephone conversation with Leroy Harvey on October 26, 2017, when Leroy indicated that they were working with Kirk Barrell and expressed his desire that Harvey, who was dealing with some medical issues, should just get well. Collins acknowledged that he did not actually even view the 2017 leases until the following February, after they had been executed. Moreover, while he testified that he had some conversations with Leroy Harvey about the Austin Chalk Play in mid to late 2017, he never contended that he had presented the Harvey-Jackson Family with any offers for any mineral leases in 2017 or 2018.

Although Collins specifically acknowledged in his deposition that the Agreement was not an exclusive agreement and that the Harvey-Jackson Family had the right to utilize the services of another consultant, he nonetheless contended that the Agreement had not been terminated, and that the agreement entitled him to an interest on any "new mineral leases," including the Amelia leases. When questioned with regard to any services he may have performed for the Harvey-Jackson Family relative to the Austin Chalk Play, Collins testified that the lease form he had prepared for the Harvey-Jackson Family was utilized in these new leases, and possibly the shape file maps as well.

Initially, we reject as unsupportable any contention that Collins or one of his

16

companies would be entitled to payment under the Agreement even in the absence of the rendition of any "services" as contemplated thereunder. To hold otherwise would result in an absurd reading of that document. Indeed, no language in the Agreement, upon which DSC or the other Collins defendants rely to establish an entitlement to payment due, supports such an interpretation.

Moreover, with regard to any purported use by plaintiffs of the lease forms, Collins acknowledged in his deposition that neither he nor his companies held trademarks on the lease forms. Also, when asked if he was contending that he had some legally protected property right in the lease form, Collins merely stated that it was a confidential lease form and noted that, as such, to preserve its confidential nature, a memorandum of oil and gas lease was recorded in the public records, rather than the lease form itself. However, Collins further acknowledged that he had shared the lease form in 2011 or 2012 with other parties, yet had not required those with whom he shared it to execute any sort of confidentiality agreement. Thus, as to the leases executed by the Harvey-Jackson Family in 2017 and 2018, the lease form that he relied upon as constituting "services" was, in fact, a lease form he had previously drafted for the family, which had been used for **past mineral leases** executed with the aid of his services, and for which none of the Collins defendants makes a claim that they have not already been compensated.

Regarding the shape file maps, topographic maps of the Harvey-Jackson Family lands, Collins acknowledged that the Harvey and Jackson families had maps of their properties before September 2007. He explained that the shape file map was prepared at his expense by Custom Mapping Services, L.L.C., based on maps and property descriptions the Harvey and Jackson families had provided to Collins. Collins acknowledged that the family did not ask him to prepare the map. Rather, he requested that Custom Mapping create it, and he then attached a copy of the shape file map to the Agreement he presented to the Harvey-Jackson Family.

17

According to Collins, different versions of the shape file map were prepared thereafter, based on the particular information the parties wished to have depicted.

Additionally, Collins was not even sure that the Harvey-Jackson Family had used the shape file maps with regard to any leases the family had executed without his services. Rather, he testified in his deposition that he "suspect[ed] that they were used" and further stated, "I don't know for a fact. I believe the [shape file maps] were used at some point." Moreover, Collins did not create the maps himself, but instead merely paid for the mapping services. Therefore, the claim that the shape file maps constituted "services" provided with regard to leases executed in 2017 and 2018 was, in fact, based on **prior services unrelated to the 2017 or 2018 leases**, and Collins was uncertain as to whether the maps were even utilized in 2017 or 2018.

Thus, in sum, other than the use of the lease form drafted for past mineral leases of the Harvey-Jackson family lands, suspected use of the shape file maps prepared in relation to prior dealings, and some general conversation with Leroy Harvey about the Austin Chalk Play, Collins could not think of or identify any other "services" he had rendered.

Based on the foregoing, we find on *de novo* review that plaintiffs carried their burden on summary judgment as to DSC's reconventional demand by showing an absence of factual support for an element of DSC's claim, i.e., the absence of factual support that it had performed "services" with regard to mineral leases executed by the Harvey-Jackson Family in late 2017 or 2018. Moreover, we further find that plaintiffs carried their burden on summary judgment as to their main demand of establishing there is no genuine issue of material fact that the Collins defendants did not perform any services within the meaning of the Agreement relative to any mineral lease for which they had not already been paid. Thus, given the absence of evidence of any services provided by the Collins

18

defendants relative to the leases executed in 2017 and 2018, plaintiffs established their entitlement to judgment in their favor, as a matter of law, declaring that the Agreement was not enforceable as to any leases they executed in 2017 or 2018 and further declaring that they do not owe any compensation to the Collins defendants, in any form, as well as their entitlement to judgment dismissing DSC's reconventional demand.

Given the showing made by plaintiffs, the burden on summary judgment therefore shifted to the Collins defendants, both as to plaintiff's main demand and as to DSC's reconventional demand, to present evidence demonstrating a material factual issue remains.

Despite the voluminous filings by the Collins defendants in opposition to the plaintiffs' motion, on *de novo* review, we find that the defendants failed to present any evidence demonstrating a genuine issue of material fact. None of the evidence submitted by the Collins defendants demonstrates that any factual issue remains as to whether DSC or any of the Collins defendants performed any "services" within the meaning of the Agreement relating to or in connection with the leases executed by the Harvey-Jackson Family with Amelia, or as to any other leases they executed in 2017 or 2018.

Accordingly, we find that plaintiffs established their entitlement to judgment declaring: (1) the Agreement was not enforceable relative to any oil and gas leases associated with the Austin Chalk Play or that were executed in 2017 and 2018 by plaintiffs; (2) that plaintiffs owed the Collins defendants no money at this time; and (3) that plaintiffs were not obligated to assign or otherwise pay any royalties to the Collins defendants. Thus, plaintiffs further established their entitlement to summary judgment dismissing DSC's reconventional demand.

**Summary Judgment Regarding Absence of a Contract**

Turning to plaintiffs' Motion for Summary Judgment Regarding Absence of

19

a Contract, in support of their motion, plaintiffs noted that the Agreement was never fully executed and remains incomplete. Thus, they asserted that the critical determination is whether those parties signing the Agreement intended to be bound absent the signatures of the other named parties to the contract. Plaintiffs argued that the Agreement contemplated all of their signatures, noting that it listed all members of the Harvey-Jackson Family collectively as one "Mineral Owner." Additionally, plaintiffs noted that the Harvey-Jackson Family members collectively own vast amounts of property and asserted that marketing the mineral interests of those properties required unified participation from all the landowning family members.

Plaintiffs further contended that a series of written communications between the parties in 2010 objectively demonstrated that there was no meeting of the minds in 2007, and that neither side believed a contract was in place. According to plaintiffs, these communications undisputedly demonstrated that the arrangement between the Harvey-Jackson Family and Collins would be on a "deal-to-deal" basis and would be non-exclusive. Thus, they asserted, no contract was ever formed in 2007.

Plaintiffs further asserted that the business dealings between the parties continued on a deal-to-deal basis after November 1, 2010, and that Collins had been paid, either directly or indirectly, for every deal on which he had actually worked where a mineral lease was obtained. However, according to plaintiffs, from December 2013 until 2017, there was little or no business contact between the parties regarding oil and gas leasing opportunities, with Collins failing to present any deals to the Harvey-Jackson Family during that time period. Additionally, they asserted that neither Collins nor his companies provided any mineral consulting services whatsoever regarding the Austin Chalk Play. Rather, the leases presented to the Harvey-Jackson Family by third parties in late 2017 and

early 2018 relative to the Austin Chalk Play were with zero involvement, interaction, or assistance from the Collins defendants. Accordingly, plaintiffs also sought declaratory judgment as prayed for in their amended petition and for judgment dismissing DSC's reconventional demand with prejudice.

In opposition to the motion, the Collins defendants noted that the Agreement provided that each signatory was "**acting individually**," as well as on behalf of the two family trusts and three family businesses listed. While they acknowledged in their memorandum in opposition that Harvey Land I, Harvey Produce, and the two family trusts listed in the Agreement were not bound by the Agreement due to the absence of James F. Harvey's signature, the Collins defendants contended that nothing in the Agreement specified that the signatures of all parties were necessary for the Agreement to be effective. Thus, the Collins defendants argued that the Agreement was complete as to those parties who signed it.[8]

They further asserted that the November 2010 communications relied upon by plaintiffs as support for their position that the Agreement was never effective were in fact negotiations about a potential change in compensation as to a **single** oil and gas lease, but that the modification in compensation was never agreed upon. Moreover, the Collins defendants asserted that any contentions that the Agreement was non-existent due to the lack of signatures or that the Agreement was somehow amended in 2010 are disputed facts, making summary judgment inappropriate.

A contract is formed by consent, through offer and acceptance. LSA-C.C. art. 1927. Thus, an enforceable contract requires a meeting of the minds. See Ranson v. Cooper, 2016-0029 (La. App. 1st Cir. 9/19/16), 228 So. 3d 1254, 1257-1258. When, in the absence of a legal requirement, the parties contemplate a

---

[8]The Collins defendants also contended that they had an oral contract with James F. Harvey, who agreed to participate on a deal-by-deal or case-by-case basis and that James's daughter Emily followed her father in the same manner of participating on the deals.

21

certain form, it is presumed that they did not intend to be bound until the contract was executed in that form. LSA-C.C. art. 1947. Nonetheless, while ordinarily an act under private signature[9] must be signed by the parties, LSA-C.C. art. 1837, a jurisprudential exception to this statutory requirement exists when only one party has signed an agreement and the non-signing party has availed himself of the agreement or taken actions evidencing his acceptance thereof. See LSA-C.C. art. 1837, Revision Comment (b); Harp v. Succession of Bryan, 2019-0062 (La. App. 1st Cir. 9/3/20), ___ So. 3d ___, ___, 2020 WL 5249135, *5; Stevens Construction & Design, LLC v. Hillman, 2019-1329 (La. App. 1st Cir. 6/12/20), 2020 WL 3109444, *3 (unpublished). Thus, it follows that a party who **has signed** an agreement lacking the signatures of all parties may bind himself to the agreement where he avails himself of the agreement or demonstrates acceptance thereof. The question to be resolved is whether the Harvey-Jackson signatories evidenced an intent to accept the Agreement and bind themselves despite the fact that not all of the Harvey-Jackson Family members composing the "Mineral Owner" signed it.

On *de novo* review, we recognize that conflicting testimony was presented as to the parties' intentions to be bound to the Agreement[10] and as to the import of

---

[9]An act under private signature is one executed by the parties without the intervention of a public officer such as a notary public. Harp v. Succession of Bryan, 2019-0062 (La. App. 1st Cir. 9/3/20), ___ So. 3d ___, ___, 2020 WL 5249135, *5.

[10]In support of their motion, plaintiffs filed, among other things, a copy the Agreement and deposition testimony of Collins. As set forth above, the Agreement lists the members of the Harvey-Jackson Family collectively as "Mineral Owner," and the Agreement was not signed by all of them. Additionally, the effective date of the Agreement was never completed.

To further complicate the issue of what the parties agreed to, while the Agreement provided that the Mineral Consultant, i.e., DSC, would receive compensation from the Mineral Owner as specified therein, Collins acknowledged in his deposition that there were instances in which payments for services to Harvey-Jackson Family members were directed to Dan S. Collins, CPL & Associates, rather than DSC.

In opposition, the Collins defendants filed the deposition of Collins, wherein he acknowledged that the Agreement had not been signed by or on behalf of James F. Harvey, Harvey Lands I, Harvey Produce, or Emily Harvey. He further acknowledged that he had had conversations with James F. Harvey, who had indicated that he wanted to work with Collins on case-by-case basis and that James did not always participate in the deals he put together for other family members. When asked about any conversations with other family members regarding moving forward on a case-by-case basis, Collins responded, "Well, there might -- there might have been some discussion after they saw that James wasn't getting -- you know, wasn't participating and – you know it was interesting." However, he contended that those members of

22

the 2010 email communications between some of the parties,[11] which would

---

the Harvey-Jackson Family who had signed the Agreement never told him they wanted to deviate from it. According to Collins, the Harvey-Jackson Family members accepted his proposal as reflected in the Agreement, they handed him the "executed copy" of the Agreement, and they operated under the terms of the Agreement, resulting in payment as set forth therein.

[11]With regard to the 2010 email communications between the parties, offered by plaintiffs in support of the motion, Collins sent a letter dated October 28, 2010, by email to certain family members and requested that they print the letter and "discuss with the family." The October 28, 2010 letter contained the reference "RE: Oil, Gas and Mineral Lease[,] Harvey/Jackson Family and Entities[,] Compensation Fee Agreement" and was addressed "Dear Harvey/Jackson Family." In the letter, Collins discussed lease proposals from two companies and other potential leasing opportunities. The letter then provided, "In regard to outlining an understanding of considerations and approval with the Harvey/Jackson families I submit the following compensation schedule with my firm... ." After listing those proposed compensation terms, the letter stated, "If the compensation fee agreement would be agreeable please so indicate by signing below," and sixteen signature lines were provided. Notably, the compensation terms proposed in the October 28, 2010 letter differed from the compensation terms set forth in the Agreement in that the letter proposed differing compensation formulas depending on the acreage price of any potential mineral lease.

In response to Collins's October 28, 2010 letter, Scott Harrington sent Collins a letter from Leroy and James Harvey by email dated November 1, 2010, stating, "Dan, Leroy asked me to send this to you... ." The attached letter, which, although unsigned, stated that it was from Leroy and James Harvey, was addressed to Collins and stated that they appreciated Collins's "efforts in pursuing oil, gas and mineral leases for the Harvey/Jackson family lands" and his "diligent efforts in keeping us up to date on activity within the area." The letter further provided, "We also realize the need to have something in writing regarding your compensation schedule as we move forward in the coming months," but noted that "[t]he arrangement should be structured on a **deal-to-deal** basis as the offers vary widely throughout the region, based on a number of factors" and that "**[t]his arrangement is non-exclusive** ... ." [Emphasis added]. After setting forth proposed compensation terms pertaining to the "Austin Chalk and Marine Shale play in the Florida Parishes," the letter again stated that "[t]his should be approved on a deal-to-deal basis." Notably, neither Collins's October 28, 2010 letter nor the November 1, 2010 response from the Harveys ever mentions the Agreement signed by some of the parties in 2007. Plaintiffs contended that these email communications further demonstrated that no meeting of the minds had occurred in 2007 when Collins presented the Agreement to them.

In opposition to the motion, the Collins defendants pointed to deposition testimony by Collins wherein he claimed that the October 28, 2010 letter was an attempt on his part to amend his payment terms for **one particular trade** in order "to make it work." Collins explained that in 2010, one company made a proposal to the Harvey-Jackson Family, and Leroy Harvey wanted to take the trade. According to Collins, in a meeting with Harvey-Jackson Family members, Leroy Harvey suggested that the family take the deal and that they would pay Collins a certain amount, which would have reduced Collins's compensation "significantly." Collins testified that he responded, "Mr. Harvey, I don't – I haven't agreed to that because that's not what my contract said." He further testified that "you could have heard a pin drop, because, in essence, he was saying – he was changing the deal we had memorialized to writing" and that when they broke for lunch, William T. ("Tom") Jackson told Collins, "Dan, I wouldn't do that to you." Nonetheless, because of Leroy Harvey's wishes to take the deal, Collins explained that he was trying to find a way to make that particular trade work with regard to Collins's compensation. However, according to Collins, "none of this ever came to pass... ."

Collins further claimed that the parties never agreed to the terms of James and Leroy Harvey's November 1, 2010 letter, with which he contended he would have had to agree since they already had a contract in place. Rather, according to Collins, they stood with the Agreement they had. Additionally, Collins noted that the November 1, 2010 letter was from only James Harvey, who had never signed the Agreement, and Leroy Harvey. Thus, he asserted that even if that letter could be construed as a termination of the Agreement, it would be effective only as to Leroy Harvey and not the other signatories to the Agreement.

Collins acknowledged that he did not raise the existence of the Agreement in his October 28, 2010 letter to the Harvey-Jackson Family or in his email response to the Leroy and James Harvey's November 1, 2010 letter, wherein he stated he would "review and get back on Tuesday." However, he stated that they had already had a "heated discussion" about it.

23

generally preclude summary judgment.

Notably, however, in both of their motions for summary judgment, plaintiffs sought relief as prayed for in their amended petition, and, as discussed above, they have proven their entitlement to summary judgment granting that relief through the evidence presented in support of their Motion for Summary Judgment Regarding Lack of Performance, which appears to fully resolve the dispute between the parties. The evidence suggests that there was some arrangement in place or agreement of some sorts between the parties, regardless whether the terms of the arrangement were confirmed in writing as to the signatories of the Agreement or whether the parties operated on a deal-to-deal basis, through which plaintiffs paid the Collins defendants for deals negotiated through their services. However, what is clearly and undisputedly established in the record is that the Collins defendants did not perform any "services" in relation to the Amelia leases or any other leases executed by plaintiffs in 2017 or 2018, for which they would be entitled to payment under the terms of the Agreement.

Accordingly, while the portion of the district court's judgment granting the Motion for Summary Judgment Regarding Absence of a Contract was unnecessary and will be vacated, we affirm the portion of the district court's March 3, 2020 judgment granting plaintiffs' Motion for Summary Judgment Regarding Lack of Performance. To the extent that the district court rendered judgment broadly declaring that the Agreement "is unenforceable," we note that this relief was not the precise relief prayed for in plaintiffs' amended petition nor in their Motion for Summary Judgment Regarding Lack of Performance. Accordingly, we will amend that portion of the judgment to declare, as prayed for by plaintiffs, that the Agreement is unenforceable relative to any oil and gas leases associated with the Austin Chalk Play or that were executed in 2017 and 2018 by plaintiffs. Additionally, to the extent the district court rendered judgment declaring that the

24

Agreement "carries no legal effect relative to any oil and gas leases, including but not limited to those specifically associated with the Austin Chalk Play and/or that were executed in 2017 and/or 2018 (or later) by the Plaintiffs," we will amend that language, in conformity with the relief sought by plaintiffs, to more narrowly declare that the Agreement carries no legal effect relative to any oil and gas leases associated with the Austin Chalk Play or that were executed in 2017 and 2018 (or later) by plaintiffs. In all other respects, we will affirm the judgment.

## CONCLUSION

For the above and foregoing reasons, this court's November 9, 2020 Rule to Show Cause Order is recalled, and the appeal is maintained. The portion of the district court's March 3, 2020 judgment granting plaintiffs' Motion for Summary Judgment Regarding Absence of a Contract is vacated. We further amend that portion of the March 3, 2020 judgment declaring that "the document attached as Exhibit A to Plaintiffs' petition (and entitled 'Mineral Services Consulting Agreement') is unenforceable" to provide as follows:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment is hereby rendered in favor of Plaintiffs and against Defendants declaring that the Mineral Services Consulting Agreement is unenforceable relative to any oil and gas leases associated with the Austin Chalk Play or that were executed in 2017 and 2018 by plaintiffs.

We further amend the portion of the district court's March 3, 2020 judgment declaring that the Mineral Services Consulting Agreement "carries no legal effect relative to any oil and gas leases, including but not limited to those specifically associated with the Austin Chalk Play and/or that were executed in 2017 and/or 2018 (or later) by the Plaintiffs," to provide as follows:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Judgment is hereby rendered in favor of Plaintiffs and against Defendants declaring that the Mineral Services Consulting Agreement carries no legal effect relative to any oil and gas leases associated with the Austin Chalk Play or that were executed in 2017 and 2018 (or later) by Plaintiffs.

25

In all other respects, the March 3, 2020 judgment is hereby affirmed. All costs of this appeal are assessed against Dan S. Collins, DSC Associates, LLC, and Dan S. Collins, CPL & Associates, Inc.

**APPEAL MAINTAINED. JUDGMENT VACATED IN PART, AMENDED IN PART, AND AFFIRMED, AS AMENDED.**